FILED'06 JUN 13 15:27USDC-ORP

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Criminal Case No. 05-218-04,10-KI |
| | ) | |
| vs. | ) | OPINION AND ORDER |
| | ) | |
| SONIA VIOLET GARCIA, | ) | |
| PEDRO CHAVEZ-MINERA, | ) | |
| | ) | |
| Defendants. | ) | |

Karin J. Immergut
United States Attorney
District of Oregon
Jennifer J. Martin
Geoffrey A. Barrow
1000 S.W. Third Avenue, Suite 600
Portland, Oregon  97204-2902

      Attorneys for Plaintiff

J. Henry Langer
1698 Liberty Street, S.E.
Salem, Oregon  97302

      Attorney for Defendant Sonia Violet Garcia

Page 1 - OPINION AND ORDER

Andrew M. Kohlmetz
Raivio, Kohlmetz & Steen, P.C.
400 S.W. Sixth Avenue, Suite 914
Portland, Oregon 97204

      Attorney for Defendant Pedro Chavez-Minera

KING, Judge:

Defendants Pedro Chavez-Minera and Sonia Violet Garcia have been indicted for conspiracy to manufacture and distribute methamphetamine and using communications facilities for the purpose of conducting and facilitating methamphetamine manufacturing and distribution. Before the court are Chavez-Minera's Motion to Suppress Evidence of Intercepted Communications and Request for Evidentiary Hearing, Garcia's Motion to Join Chavez-Minera's Motion to Suppress Evidence of Intercepted Communications, her Motion to Join Ortiz's Motion to Dismiss Count 1 of Indictment,[1] and her Motion to Sever and Request for Court Trial. The government has also filed a Motion for Voice Exemplars.

The government's Motion for Voice Exemplars (#249) is dismissed as moot by agreement of the parties at the hearing on June 9, 2006. During that hearing, Chavez-Minera withdrew his Request for an Evidentiary Hearing. For the following reasons, I grant Garcia's Motion to Join Chavez-Minera's Motion to Suppress Evidence of Intercepted Communications (#256), and deny Chavez-Minera's Motion to Suppress Evidence of Intercepted Communications (#251). I also grant Garcia's Motion to Join Ortiz's Motion to Dismiss Count 1 of Indictment

---

    [1]Defendant Miguel Ortiz-Chavez entered a guilty plea to Count 1 of the Indictment on May 22, 2006, and consequently his Motion to Dismiss Count 1 of Indictment (#245) is moot as to him. Garcia's Motion to Join Ortiz's Motion to Dismiss Count 1 of Indictment will be treated as if Ortiz's motion were her original filing.

Page 2 - OPINION AND ORDER

(#255), and deny the Motion to Dismiss Count 1 of the Indictment (#245). Garcia's Motion to

Sever and Request for Court Trial (#254) is denied.

## DISCUSSION

I.      Chavez-Minera's Motion to Suppress Evidence of Intercepted Communications

In his pending motion, Chavez-Minera argues that the government's affidavits in support

of the wiretaps fail to show the particularized necessity required to justify the wiretaps, and that

consequently the court should suppress all wiretap evidence which the government seeks to

introduce in this case. He also claims that the affidavits used to obtain the wiretaps contain

material misrepresentations and/or omissions, and requests an evidentiary hearing on the legality

of the wiretaps under Franks v. Delaware, 438 U.S. 154 (1978). Chavez-Minera withdrew his

request for an evidentiary hearing on June 9, 2006. Garcia has filed a Motion to Join Chavez-

Minera's Motion to Suppress Evidence of Intercepted Communications, but has not filed a

separate memorandum in support of her motion. I grant Garcia's motion to join Chavez-

Minera's motion to suppress.

The government applied for wiretaps pursuant to Title III of the Omnibus Crime Control

and Safe Streets Act of 1968, 18 U.S.C. §§ 2510-2522, and it intends to submit as evidence at

trial the fruit of its efforts: cellular telephone calls and/or transcripts of such calls. The

government tapped six cell phones, labeled A through F, after applying for authorization to do so

on three separate occasions. The first application, granted by Judge Mosman on April 7, 2005,

covered cell phones A and B. On April 27, 2005, Judge Mosman granted the second application,

covering cell phones C and D. The final application was approved by Judge Mosman on

May 19, 2005 and covered cell phones E and F.  United States Drug Enforcement Administration

Agent Louis Nalepa provided a sworn affidavit in support of each of the three applications.

The government must "strict[ly] adhere[]" to the steps in Title III in order to obtain

authorization for electronic surveillance, and "'utmost scrutiny must be exercised to determine

whether wiretap orders conform to Title III.'"  United States v. Blackmon, 273 F.3d 1204, 1207

(9th Cir. 2001) (quoting United States v. Kalustian, 529 F.2d 585, 589 (9th Cir. 1976)).  Title III

requires that each wiretap application include

> a full and complete statement as to whether or not other investigative procedures
> have been tried and failed or why they reasonably appear to be unlikely to succeed
> if tried or to be too dangerous.

18 U.S.C. § 2518(1)(c).  This "necessity requirement" is intended to ensure that the use of

wiretaps is limited to narrowly confined circumstances.  Blackmon, 273 F.3d at 1207.  The court

utilizes a "common sense approach" employing "a standard of reasonableness to evaluate the

government's good faith effort to use alternative investigative means or its failure to do so

because of danger or low probability of success."  Id.

A judge authorizing wiretaps has considerable discretion.  United States v. McGuire, 307

F.3d 1192, 1197 (9th Cir. 2002).  Although wiretaps must not be used routinely in criminal

investigations without reasonable attempts to use other investigative methods, and should not be

the first step in an investigation, wiretaps need not be the investigative tool of last resort.

McGuire, 307 F.3d at 1196-97; United States v. Khan, 993 F.2d 1368, 1375 (9th Cir. 1993);

United States v. Butz, 982 F.2d 1378, 1383-84 (9th Cir. 1993).  Reviewing courts uphold

findings of necessity where traditional investigative techniques will result only in the

apprehension and prosecution of the main conspirators but not to the apprehension of suppliers,

buyers, and satellite conspirators.  United States v. Torres, 908 F.2d 1417, 1422 (9th Cir. 1990).

     A.     Affidavit in Support of Cell Phones A and B

     Chavez-Minera and Garcia contend that Nalepa's affidavits do not comply with the

statute's necessity requirement.  Defendants point out at least four methods that the government

had at its disposal before employing wiretaps.  First, a source of information ("SOI-1") contacted

the government on October 9, 2003 and identified Arturo Arevelo-Cuevas as a distributor of

methamphetamine in the Salem, Oregon area.  The government made no efforts to communicate

with SOI-1 between 2003 and 2005, and made no overtures to make SOI-1 a cooperating

witness.  Second, another confidential source ("CS-1") spoke with DEA agents in Salem,

reporting that s/he was close to the family, in March 2005.  Believing that CS-1 would

compromise the investigation, Nalepa did not further utilize this individual.  Third, in March

2003, a confidential source ("CS-2") reported Arturo's brother Porfirio driving Arturo's mother's

car at a drug dealer's home in Mexico.  The government did not seek additional information from

CS-2.  Fourth, the government never attempted a controlled buy of methamphetamine.  In

addition, defendants question Nalepa's reliance on the government's unsuccessful attempt to find

evidence via trash pulls as proof of the government's attempt to use other investigatory tools.

Defendants also question Nalepa's assertions that the wiretaps were justified because the alleged

conspirators used counter-surveillance driving techniques and aliases.

     After reviewing the first affidavit, I find that it provides an ample basis for the conclusion

that telephone information, physical surveillance, trash pulls, and the informants SOI-1, CS-1,

and CS-2 were tried and found inadequate for the investigation, and that the affidavit as a whole

provides the showing of particularized necessity required to justify a wiretap. The affidavit points out that telephone information, including pen registers, toll information, and trap and trace registers, provided only partial information for investigating the alleged conspiracy, and would not serve to identify remaining conspirators, customers, or sources of supply. Attaining some degree of success through traditional investigative means does not, standing alone, defeat the need for a wiretap. United States v. Bennett, 219 F.3d 1117, 1122 (9th Cir. 2000).

SOI-1 provided information to agents about the Arevalo-Cuevas family before the investigation in this case began. Once the investigation started, Nalepa contacted SOI-1, but learned that the source had not purchased drugs from any member of the family. Nalepa concluded that SOI-1 had limited information about the organization and was not privy to illegal activities. Nalepa concluded that CS-1 would jeopardize the investigation if agents attempted to use her because she had close personal ties to two members of the family because of assistance they had provided to CS-1's family. Nalepa relates that CS-2, an informant located in Mexico, was never actively involved in the Arevalo-Cuevas organization.

The availability of a cooperating witness who is willing and probably able to penetrate the conspiracy undermines the government's claim of necessity. United States v. Ippolito, 774 F.2d 1482, 1486-87 (9th Cir. 1985). However, an investigation is not required to use a confidential informant if it could result in the subjects being alerted to the investigation. Bennett, 219 F.3d at 1122 (citing United States v. Baker, 589 F.2d 1008, 1013 (9th Cir. 1979)). I find that Nalepa was reasonable in concluding that using CS-1 might jeopardize the investigation because of her close personal ties to the Arevalo-Cuevas family. Another potential cooperating witnesses, SOI-1, was a paid government informant, subjecting that witness to an attack on credibility and requiring

Page 6 - OPINION AND ORDER

further corroborative evidence.  The potential for information from SOI-1 is not enough to defeat

the government's showing of necessity.  Bennett, 219 F.3d at 1122-23 (citing United States v.

Kelley, 140 F.3d 596, 605 (5ᵗʰ Cir. 1998)).  I also find that Nalepa was justified in concluding

that further investigation of CS-2, located in Mexico and not actively involved in the Arevalo-

Cuevas organization, was unlikely to be successful.

    Agent Nalepa also documents the means of physical surveillance of vehicles used in the

investigation, as well as the limitations of physical surveillance in a conspiracy investigation

without the addition of electronic surveillance.  I find that it would be unreasonable to require the

indiscriminate pursuit of the investigative tools the defendants suggest, such as tracking devices

and radio frequency ID tags, in view of the limitations of physical surveillance.  The affidavit

also discloses two attempts to examine discarded trash.  The first revealed that the paper trash

had been shredded, and in the second attempt the trash container had not been placed out at the

curb.  In view of the minor role that trash pulls would have in the investigation, the risk of

jeopardizing the investigation did not warrant further attempts to examine discarded trash.

    The Affidavit in Support of Cell Phones A and B shows that the agents in this case made

reasonable efforts to use traditional investigative techniques, including non-voice telephone

information, confidential sources, and surveillance before seeking authorization for wiretaps.

The government need not exhaust every conceivable alternative technique before seeking a

wiretap, so long as it properly shows how "'normal investigative procedures have been tried and

failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous,'"

or that they would be ineffective.  McGuire, 307 F.3d at 1197 (quoting 18 U.S.C. § 2518(3)(c)).

I find that the first affidavit adequately describes the alternative procedures that were tried and

Page 7 - OPINION AND ORDER

failed or why other procedures, including further use of the confidential sources, appear unlikely to succeed.

      B.     Affidavit in Support of Cell Phones C and D

Defendants object to the Affidavit in Support of Cell Phones C and D based on the success of physical surveillance, pointing out that Nalepa's affidavit reports various successes with the use of traditional investigatory tools, in contrast to the statutory requirement that the affiant testify to the methods that have failed. Nalepa reports successful physical surveillance of Arturo Arevalo-Cuevas. Accordingly, defendants argue that it is not clear how Nalepa can conclude that wiretaps remain the "only available technique with a reasonable likelihood" of success. Defendant's Motion, Ex. B, ¶ 70.

Nalepa's affidavit describes in detail the physical surveillance that was used, as well as several limitations of physical surveillance and examples of the successful use of wire interception in conjunction with physical surveillance. Nalepa notes that although physical surveillance could be used to confirm meetings between alleged conspirators, it usually only leads investigators to speculate as to the purpose of the meetings. He specifically describes that "surveillance in this case has failed to conclusively establish the roles of the Subjects, the timing and details of the planned criminal activities, and has not conclusively established the identities of all of the conspirators." Defendant's Motion, Ex. B, ¶ 93.

Because the government was investigating a conspiracy, courts allow it more leeway in its investigative methods. McGuire, 307 F.3d at 1197-98. As noted above, some investigative success is not sufficient to defeat a showing of necessity. Bennett, 219 F.3d at 1122. Under these standards, I find that the second affidavit makes a sufficient showing that wiretaps were

necessary in view of the limitations of physical surveillance to the objectives of the investigation.

Nalepa's description of those limitations, as well as the evidence necessary for a successful

conspiracy prosecution which physical surveillance failed to develop, satisfy the statutory

requirement in 18 U.S.C. § 2518(1)(c) that the affiant testify to other investigative procedures

that are unlikely to succeed.

      C.      Affidavit in Support of Cell Phones E and F

Defendants again assert that Nalepa describes the successful use of traditional

investigatory methods in his third affidavit, including surveillance of Arturo Arevalo-Cuevas

which led indirectly to the recovery of $162,000 in cash from a vehicle identified as belonging to

the alleged conspirators. In addition, defendants note that another source of information became

available: Nora Serrato. She told agents she would be willing to look at photographs to

determine the leader of the conspiracy. Nalepa decided not to use this lead. Finally, Miguel

Silva-Chava, one of the subjects of the investigation, was arrested on drug and weapons charges

by Salem police officers, but Nalepa never approached him to determine whether he would

cooperate in the investigation.

Nalepa's third affidavit describes how physical surveillance would be of limited value

without electronic interceptions. According to the affidavit, "without the interceptions, much of

what has been observed, such as meetings between conspirators, the locations at which they

meet, and the vehicles used, would not have been possible or would have been of limited value."

Defendant's Motion, Ex. C, ¶ 124. Nalepa notes that wire communications intercepted pursuant

to the earlier authorized wiretaps corroborated that the conspirators employed active counter-

surveillance techniques. He also states that surveillance by itself was not reasonably likely to

succeed as the drug transactions had taken place inside locations where surveillance would be difficult. Finally, Nalepa notes that surveillance alone has failed to conclusively establish the roles and identities of the conspirators or the details of their criminal activities.

Nalepa also concluded that Serrato and Silva-Chava were not likely to prove useful to the investigation. Serrato was incarcerated and not in a position to make telephone calls to the alleged conspirators. According to Nalepa, she was concerned about the danger posed by members of the organization and would not testify against members of the organization. Nalepa concluded that she would be able to provide only limited information. Because "a reasoned review of a wiretap request must take into account the added difficulty, expense, and danger of using informants, especially those concurrently charged with other crimes, and in custody in another jurisdiction," United States v. Canales Gomez, 358 F.3d 1221, 1227 (9th Cir. 2004), I find that the agent's affidavit adequately details the reasons that Serrato would be unlikely to provide useful information for the investigation.

Silva-Chava, also known as Jose Artemio Chavez-Orozco, was taken into custody after a traffic stop for having obstructed license plates, after which the officer found a pistol, methamphetamine, and drug records on his person. He gave the officer a false name, and, according to Nalepa's affidavit, did not cooperate with the officer at the time of the stop. Nalepa stated that he did not have any reason to believe Silva-Chava would cooperate with the investigation. Even if there were reason to doubt this conclusion, the existence of a potential informant does not preclude a necessity finding. McGuire, 307 F.3d at 1199. Read in the context of the entire affidavit, which details the other investigative methods tried and their failures, limitations, or reasons that they would be unlikely to succeed, I find that the conclusion

Page 10 - OPINION AND ORDER

that further investigation of Silva-Chava would not have been fruitful is reasonable.  When read, as it must be, in a "practical and commonsense fashion," Bennett, 219 F.3d at 1122, the Affidavit in Support of Cell Phones E and F satisfies the statutory necessity requirement.

Having reviewed the three affidavits, I find that the government has provided adequate documentation that it tried ordinary investigative procedures and that those procedures failed or were not reasonably likely to be effective before seeking authorization for wiretaps, and that the affidavits meet the necessity requirement of 18 U.S.C. § 2518.  Accordingly, I deny the defendants' Motion to Suppress Evidence of Intercepted Communications.

II.     Motion to Dismiss Count 1 of Third Superseding Indictment

Defendant Miguel Ortiz-Chavez filed a Motion to Dismiss Count 1 of Indictment, but subsequently entered a plea of guilty.  Prior to this development, Garcia filed a Motion to Join Ortiz's Motion to Dismiss Count 1 of Indictment.  I grant Garcia's motion and address Ortiz's motion as if it were her filing.

Garcia asserts that Count 1 of the third superseding indictment is duplicitous in that it alleges more than one conspiracy in a single count, in violation of her due process rights.

Count 1 reads as follows:

> Beginning at a time unknown within 2004, the exact date being unknown to the Grand Jury and continuing through on or about May 26, 2005, within the District of Oregon and elsewhere, defendants SONIA VIOLET GARCIA; PEDRO CHAVEZ MINERA aka Juan Gonzales and Gabriel; RAMON SOTO-CHAVEZ aka Ramoncito; and MIGUEL ORTIZ-CHAVEZ, aka Miguelito and Miguelillo, did willfully and knowingly combine, conspire and confederate with each other and with [other named codefendants], and others both known and unknown to the Grand Jury, to manufacture, distribute and to possess with intent to distribute, methamphetamine, a Schedule II controlled substance, in an amount greater than 50 grams of pure methamphetamine or 500 grams of a mixture and substance containing a detectable amount of mehtamphetamine in violation of Title 21, United States Code, Sections 841(a)(1) and (b)(1)(A)(viii); and to use

Page 11 - OPINION AND ORDER

communication facilities for the purpose of conducting and facilitating the
methamphetamine manufacturing and distribution activities in violation of
Title 21 United States Code, Section 843(b).

Third Superseding Indictment, Count 1. Garcia is largely concerned that a jury could find her

guilty on Count 1 without unanimously agreeing on which of the two alleged activities

constituted the object of her involvement. For example, a juror could decide that Garcia used a

telephone one time to facilitate the manufacture or distribution of methamphetamine, but that she

was not part of the larger conspiracy to manufacture more than 50 grams of methamphetamine.

The court must evaluate "whether the indictment can be read to charge only one violation

in each count." United States v. Gordon, 844 F.2d 1397, 1400 (9th Cir. 1988) (citing United

States v. Mastelotto, 717 F.2d 1238, 1244 (9th Cir. 1983)). "In the absence of a showing of an

improper charging of the grand jury, the grand jury and prosecutor must be presumed to have

followed the command to charge but one crime in each count of the indictment." Mastelotto, 717

F.2d at 1244, overruled on other grounds by United States v. Miller, 471 U.S. 130 (1985). An

indictment may allege several substantive offenses in a conspiracy count because a conspiracy

can have more than one object. United States v. Smith, 891 F.2d 703, 712 (9th Cir. 1989); see

also United States v. Begay, 42 F.3d 486, 501 (9th Cir. 1994) ("An indictment charging

conspiracy to commit more than one offense is not duplicitous."). In order to differentiate

between single and multiple conspiracies, factors to consider include the nature of the scheme,

the identity of the participants, the quality, frequency and duration of each conspirator's

transactions, and the commonality of time and goals. United States v. Zemek, 634 F.2d 1159,

1168 (9th Cir. 1980). In Zemek, although the co-conspirators participated in several crimes,

there was "'one overall agreement' to perform various functions to achieve the objects of the

Page 12 - OPINION AND ORDER

conspiracy." See id. at 1167 (quoting United States v. Kearney, 560 F.2d 1358, 1362 (9th Cir. 1977)).

The question is whether Count 1 of the indictment charges two separate conspiracies, as Garcia argues, or whether the count alleges a single conspiracy with multiple objects. The Ninth Circuit often has held that an indictment charging conspiracy to commit more than one offense is not duplicitous. See, e.g., Begay, 42 F.3d at 501; Smith, 891 F.2d at 712 (citing Braverman v. United States, 317 U.S. 49, 54 (1942)). In Begay, the Ninth Circuit upheld a denial of a motion to dismiss for duplicity where the indictment charged the defendants with conspiracy to commit "violations and offenses against the United States," alleging conspiracy to commit multiple crimes–assault, kidnaping, and burglary–in the same count. Begay, 42 F.3d at 501.

Garcia relies on Gordon in arguing that Count 1 of the indictment is duplicitous. In Gordon, the government alleged conspiracy to defraud the United States and conspiracy to obstruct a grand jury investigation in the same count. The court found that these were two separate conspiracies. Gordon, 844 F.2d at 1401. However, Gordon is distinguishable because the indictment challenged in that case alleged conspiracies that occurred at different times. The first was a conspiracy to defraud the government, ending in August or September of 1983. The second was a conspiracy to obstruct the grand jury's investigation of the first conspiracy, beginning in March of 1984. By contrast, in this case, the government has alleged a conspiracy involving contemporaneous manufacturing and distribution of methamphetamine and use of communications facilities to facilitate that manufacturing and distribution.

A fair reading of the indictment in this case shows that the government has charged a single conspiracy in Count 1, involving the manufacture and distribution of methamphetamine,

Page 13 - OPINION AND ORDER

alleging that the conspiracy involved the commission of multiple crimes. Braverman, 317 U.S. at 54 ("The allegation in a single count of a conspiracy to commit several crimes is not duplicitous, for '[t]he conspiracy is the crime, and that is one, however diverse its objects.'") (citation omitted)).  The commonality of the time period between the two crimes that the conspiracy is alleged to have furthered, the identity of the participants involved in both alleged crimes, and the overlap of the alleged actions by the coconspirators are all factors that weigh in favor of finding a single conspiracy. See Zemek, 634 F.2d at 1168.  Accordingly, I find that Count 1 is not duplicitous, and I deny the Motion to Dismiss Count 1 of the Third Superseding Indictment.

III.    Garcia's Motion to Sever and Request for Court Trial

        Pursuant to Federal Rule of Criminal Procedure 14(a), Garcia moves to sever her trial from that of Chavez-Minera.  Rule 14(a) provides for relief from joinder when such joinder would prejudice a party.  Joinder of offenses may prejudice a defendant because

> (1) he may become embarrassed or confounded in presenting separate defenses;
> (2) the jury may use the evidence of one of the crimes charged to infer a criminal
> disposition on the part of the defendant from which is found his guilt of the other
> crime or crimes charged; or (3) the jury may cumulate the evidence of the various
> crimes charged and find guilt when, if considered separately, it would not so find.

United States v. Johnson, 820 F.2d 1065, 1070 (9th Cir. 1987) (quoting Drew v. United States, 331 F.2d 85, 88 (D.C. Cir. 1964)).  As for joinder with codefendants, severance is sometimes warranted when

> evidence that the jury should not consider against a defendant and that would not
> be admissible if a defendant were tried alone is admitted against a codefendant.
> For example, evidence of a codefendant's wrongdoing in some circumstances
> erroneously could lead a jury to conclude that a defendant was guilty.  When
> many defendants are tried together in a complex case and they have markedly
> different degrees of culpability, this risk of prejudice is heightened.

Page 14 - OPINION AND ORDER

Zafiro v. United States, 506 U.S. 534, 539 (1993).

Garcia asserts that the discovery demonstrates she never manufactured or sold drugs to anyone, never possessed drugs with an intent to distribute them, never knowingly aided or abetted the members of the conspiracy, never visited the methamphetamine lab in Brownsville, Oregon, never possessed or maintained any weapons, and never concealed her identity or knowingly assisted the members of the conspiracy in any way. Garcia is concerned the jury will be confused and think that she conspired to sell or manufacture methamphetamine, based on the other allegations in the indictment and other defendants in the case, resulting in conviction by association. Garcia also claims that Arturo Arevalo-Cuevas has offered to testify on her behalf that she was not part of the conspiracy. However, she claims he is likely to testify only if she is tried separately, because he will not want to become a government witness. Finally, Garcia asserts that her defenses are different from those of her codefendant. However, she does not specify what those defenses might be. If her motion is granted, Garcia agrees to stipulate that the major conspiracy occurred and waive her right to a jury trial.

The government responds that it will offer evidence that Garcia acknowledged receiving $1500 per month from the Arevalo-Cuevas family and that she traveled to San Jose, California with members of the family on April 30 and May 1, 2005, about a month before her arrest. The government alleges that Garcia's trip to San Jose was in furtherance of the conspiracy's efforts to obtain precursor chemicals for the manufacture of methamphetamine and to smuggle codefendant Irania Arevalo-Cuevas into the United States. The government argues that Garcia's role in the conspiracy was "unique" because she was the only member of the conspiracy who was

an American citizen, and that this status was used during the trip to California to obtain precursor chemicals and smuggle Irania Arevalo-Cuevas into the United States.

Garcia's alleged role in the conspiracy was distinct from that of her remaining codefendant, Chavez-Minera. Chavez-Minera is alleged to have been involved in dismantling that methamphetamine lab and to have accompanied Arturo Arevalo-Cuevas on the April/May 2005 trip to California to obtain precursor chemicals. Chavez-Minera, in a statement shortly after his arrest, claimed that he had not been to the Brownsville methamphetamine laboratory and that he had no knowledge of the conspiracy.

Garcia has not shown that the she would be prejudiced by a joint trial. The evidence applicable to each of the remaining defendants is clearly distinguishable. Her apparent defenses–that the government has not shown her involvement in the conspiracy–are similar to and not inconsistent with the defenses that Chavez-Minera appears likely to offer. Garcia has not indicated how her defenses and those of Chavez-Minera would be inconsistent or how they might prejudice or implicate each other. Severance is warranted only upon a showing of compelling or undue prejudice that would violate a defendant's right to a fair trial. See United States v. Cruz, 127 F.3d 791, 798 (9th Cir. 1997); United States v. Hernandez, 952 F.2d 1110, 1115 (9th Cir. 1991); see also United States v. Escalante, 637 F.2d 1197, 1201 (9th Cir. 1980) ("Generally speaking, defendants jointly charged are to be jointly tried. This is also the rule in conspiracy cases."). Garcia has not shown that any prejudice that might arise from a joint trial with Chavez-Minera rises to a level of significance that would justify severance.

Arturo Arevalo-Cuevas's proposed testimony also does not warrant severance. Garcia relies on United States v. Echeles, 352 F.2d 892 (7th Cir. 1965) and United States v. Gay, 567

F.2d 916 (9th Cir. 1978) for the proposition that she should have a separate trial to allow her to call a witness who would provide exculpatory testimony. Neither of the cited cases support her argument that she should be tried separately to obtain the testimony of a witness who is not a codefendant at her trial. Echeles involved a defendant who sought a separate trial so that his codefendant could provide exculpatory evidence, which the codefendant would not provide in a joint trial based on his Fifth Amendment privilege against self-incrimination. The Seventh Circuit agreed that this circumstance warranted severance. Echeles, 352 F.2d at 898. In Gay, the district court faced a similar situation in which two codefendants sought severance based on a third codefendant's offer to testify at their trial only if his trial preceded that of the other two, to preserve his Fifth Amendment privilege at his own trial. Here, Arturo Arevalo-Cuevas has pled guilty and been sentenced, and has waived his Fifth Amendment privilege as part of his plea. Because the privilege against self-incrimination is no longer available to Arturo Arevalo-Cuevas, there is no reason that he could not testify as fully in a joint trial as in a trial of Garcia alone.

Finally, Garcia's offer to waive her right to a jury trial if her motion to sever is granted does not justify a separate trial. Under Federal Rule of Criminal Procedure 23(a), a defendant must be tried by a jury unless she waives a jury trial, the government consents, and the court approves. The government will not consent to a separate trial to the court in her case. Because Garcia has not shown that she would be prejudiced by a joint trial with Chavez-Minera, I deny her Motion to Sever and Request for Court Trial.

///


///


Page 17 - OPINION AND ORDER

## CONCLUSION

For the foregoing reasons, I grant Garcia's Motion to Join Chavez-Minera's Motion to Suppress Evidence of Intercepted Communications (#256), and deny Chavez-Minera's Motion to Suppress Evidence of Intercepted Communications (#251). I also grant Garcia's Motion to Join Ortiz's Motion to Dismiss Count 1 of Indictment (#255), and deny the Motion to Dismiss Count 1 of the Indictment (#245). I deny Garcia's Motion to Sever and Request for Court Trial (#254). The government's Motion for Voice Exemplars (#249) is dismissed as moot by agreement of the parties.

IT IS SO ORDERED.

Dated this ___/3___, day of June 2006.

Garr M. King
United States District Judge